UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIE J. STEVENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:03CV01188 |
| ) | |
| BEST BUY CORP., ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Willie J. Stevenson was employed as a Parts Processor by Best Buy Corp. ("Best Buy"). Stevenson was discharged in August 2003.

Stevenson alleges that he was treated unfairly and illegally as an employee and was illegally discharged. He asserts claims against Defendant Best Buy Corp, as well as individual Defendants Fred George, Dorothy Beard, Laslie Boyer, Kathie Fischer, Janice Aholt, Traci L. Lembeck, Mary Lawless, Donna Conway, and Karen Giddens. Both Stevenson and the Defendants have moved for summary judgment. Because Stevenson has failed to establish a factual basis for his claims, I will grant summary judgment for Defendants.

*I.     Background*

Stevenson was hired to work for Best Buy as a Parts Processor in June 2002. His job duties involved receiving parts used in the repair of products at the Service Center and entering information with regard to those parts into the Service Center's product/inventory control system. Stevenson's original supervisor was Janice Aholt, and during Stevenson's first annual performance review, Aholt rated him within the "needs improvement" level of performance. She noted several areas of Stevenson's performance that could be improved, including his attention to detail and his

relationship with other employees.  At the time of his review, Stevenson received a raise from approximately $8.92 per hour to $9.01 per hour.  Stevenson was unhappy with his June 2002 evaluation.  He was upset that he had been told that his errors had been very costly.  He was also disappointed about the size of his raise.

Stevenson raised his concerns about the June 2002 evaluation to his general manager, Fred George, and Best Buy's District Human Resources Manager, Dorothy Beard.  Stevenson asserted that the evaluation was discriminatory and harassing and informed George and Beard that he was going to file a complaint with the EEOC.  Following his complaints, George, Beard and Aholt met with Stevenson to discuss his concerns, and he was told that his raise would not be adjusted at that time, but if he demonstrated improved performance over the next several months, his pay would be increased.  In fact, Stevenson received an additional raise effective January 5, 2003.

In the fall of 2002, Stevenson injured himself while at work, and as a result, accommodations were made for adjustments in his work.  Stevenson also took a leave of absence for hernia repair surgery.  Following the surgery, Stevenson received accommodations to his schedule to allow visits to his doctor.  At about this same time, Stevenson provided information to his supervisors regarding foot pain.  Stevenson's foot pain did not require any specific work restrictions.  He continued working while occasionally asking to be relieved from walking parts around for delivery.  These requests were generally accommodated.  In October 2002, Stevenson made a claim for Workers' Compensation benefits in connection with the hernia repair surgery.

During the course of his employment, several issues arose involving Stevenson.  First, he believed that he was being harassed when issues regarding errors in the receiving process were brought to his attention.  He also complained that coworkers and supervisors were harassing him.

These complaints typically involved disputes in the workplace over proper procedures and Stevenson's beliefs that he was being required to do things that he should not have to do or to do things in a particular way which he felt should be done differently. Stevenson also complained that work assignments were given out unfairly and that this constituted race, sex and age discrimination. Stevenson proposed changing the way that assignments were made, but was told that all employees, regardless of age or gender, were required to be able to lift up to 70 pounds and to move up to 200 pounds on a cart per company guidelines.

By August 2003 Stevenson was being paid at a rate of $9.76 per hour. He asserts that his pay was unfairly low compared with other employees. Best Buy states that any particular employee's pay was influenced by any related experience they had prior to being hired by Best Buy, their length of time with Best Buy, and their performance ratings.

In April 2003, Stevenson was involved with a confrontation with his current supervisor Traci Lambeck. Lambeck observed Stevenson standing in the Parts Department not engaged in any work activities. When Lambeck instructed him to help with the work, Stevenson objected and claimed that Lambeck was harassing him and that he was going to take his complaint to Beard.

Best Buy asserts that in the summer 2003, George learned that certain products being handled by the Service Center would no longer be sent there for servicing. As a result of these changes, George was instructed to reduce staff at the Service Center. George received specific instructions and forms from Best Buy to use in determining which employees to layoff. The Best Buy instructions required Service Center management to rank employees in a number of different categories. One ranking was based on the number of written discipline warning issued to each employee at any time after February 15, 2003. Another ranking was based on their most recent

performance evaluation, while another ranking was based on the employee's length of service. Finally, employee's were ranked based on management's assessment of their potential leadership abilities and their engagement within the department and Service Center structure.

Stevenson had only one written warning in his file following February 15, 2003. Additionally, Stevenson had been ranked as a "solid performer" in his June 2003 evaluation. Finally, Stevenson was ranked low with regard to his potential leadership abilities because of the assessment that he was notably abrasive with his coworkers and quick to blame others for problems and mistakes. The managers also noted that Stevenson was very resistant to following instructions or meeting standards set by managers in the company when he disagreed with those instructions and expectations.

Plaintiff was one of two employees in the Parts Department selected for layoff. The other employee selected was Katie Munsell, a white female. On August 26, 2003, Stevenson filed the instant action alleging that Best Buy and the individual defendants treated him unfairly and illegally as an employee and that his discharge in August 2003 was illegal. Stevenson filed his motion for summary judgment on June 17, 2005, and Defendants filed their motion for summary judgment on September 2, 2005.

## II. *Legal Standards for Summary Judgment*

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . ." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. See Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is an "integral part of the Federal Rules as a whole." Celotex, 477 U.S. at 326; City of Mt. Pleasant v. Assoc. Electric. Cooperative, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Under these standards, I review the facts in this case.

### III. *Analysis*

#### A. *Title VII, ADEA, and ADA Claims against Individual Defendants*

Sevenson's allegations against the named individuals for discrimination in violation of Title VII, the ADEA or the ADA, fail as a matter of law. It is well settled that Title VII provides for claims only against an individual's "employer" and that individual coworkers, supervisors and

managers are not employers under the statute. Bales v. Wal-mart Stores, Inc., 143 F.3d 1103, 1111 (8th Cir. 1998); Spencer v. Ripley County State Bank, 123 F.3d 690, 691-692 (8th Cir. 1997); Lenhardt v. Basic Inst. of Tech., 55 F.3d 377, 381 (8th Cir. 1995). Because the definition of "employer" under both the ADEA and ADA are the same as in Title VII, claims against individuals are similarly barred under those statutes. See Wathen v. G.E., 115 F.3d 400, 404-405 (6th Cir. 1997) (finding liability schemes under Title VII, ADEA and ADA essentially the same with regard to the definition of "employer"); see also EEOC v. AIC Security Investigations, 55 F.3d 1276, 1279-1282 (7th Cir. 1995) (no individual liability under the ADA).

I will grant summary judgment for Defendants Fred George, Dorothy Beard, Laslie Boyer, Kathie Fischer, Janice Aholt, Traci L. Lembeck, Mary Lawless, Donna Conway, and Karen Giddens on Stevenson's claims under Title VII, the ADA, and the ADEA.

*B.    OSHA Claims*

Stevenson has also asserted claims against all of the defendants under OSHA, 29 U.S.C. § 660. Stevenson's OSHA claim must fail because the OSHA statutory scheme does not provide for a private cause of action. See Taylor v. Brighton Corp., 616 F.2d 256, 262-63 (6th Cir. 1980) (holding that OSHA did not create a private right of action whereby employees discharged in retaliation for reporting safety violations could maintain a suit against their former employers).

I will grant summary judgment for all Defendants on Stevenson's claims under OSHA.

*C.    42 U.S.C. § 1983 Claims*

Stevenson has asserted claims against Defendants for claimed violations of rights under 42 U.S.C. § 1983. In order to state a claim under § 1983, Plaintiff must show that the conduct complained of was committed by a person acting "under color of state law," and that the conduct

deprived the person of rights, privileges or immunities secured by the Constitution of the United States. Comiskey v. JFTJ Corp., 989 F.2d 1008, 1010 (8th Cir. 1993). To show that a private citizen's actions constitute "state action" under § 1983, Stevenson must show that the person's actions can be "fairly attributed to the State." Id. at 1010 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1981)). This means that Stevenson must show that the deprivation of his Constitutional rights is caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or is the action of a person for whom the State is responsible. Id. In addition, Stevenson must show that the person charged with the deprivation is a "state actor," that is, a state official or private party who has acted together with or obtained significant aid from state officials." Id.

Here, none of the Defendants has acted together with, or obtained significant aid from, any state officials with regard to the conduct complained of by Stevenson. Defendants did not act according to a rule of conduct imposed by the State, and none of them were individuals for whom the State is responsible.

I will grant Summary Judgment for Defendants on Stevenson's claims under 42 U.S.C. § 1983.

*D.    42 U.S.C. § 1985 Claims*

Stevenson has also asserted claims under 42 U.S.C. § 1985. To prove a constitutional conspiracy under § 1985, Stevenson must show that there was an agreement between the alleged conspirators to deprive him of his civil rights. Jenson v. Henderson, 315 F.3d 854, 862-63 (8th Cir. 2002). The threshold to prove a claim under § 1985 is very high. Stevenson must show evidence of "purposeful discrimination" to establish such a claim. Jensen, 315 F.3d at 862;

McIntosh v. Arkansas Republican Party-Frank White Election Committee, 766 F.2d 337, 340 (8th Cir. 1985).

Stevenson has not put forth *evidence* to support a conclusion that Defendants entered into an agreement or that Defendants behavior was purposefully discriminatory. Stevenson's evidence is nothing more than his own conclusory allegations that Defendants conspired to deprive him of his rights on the basis of race, sex, age and disability. He has not presented any admissible evidence of any agreement between the parties to conspire. Such conclusory allegations are not sufficient to state a claim under § 1985. See Jensen, 315 F.3d at 862-63; see also Palesch v. Missouri Commission on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000).

I will grant Defendants' motion for Summary Judgment with regard to Stevenson's claims under 42 U.S.C. § 1985.

### E.   *Title VII and ADEA Claims Against Best Buy*

Stevenson asserts claims under Title VII for race and sex discrimination as well as claims of age discrimination under the ADEA. Analysis of discrimination claims under Title VII and age discrimination claims made under the ADEA are the same. The claims are reviewed using the three-part McDonnell-Douglas burden shifting analysis. Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005); Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004). Under McDonnell-Douglas, Stevenson must first make a sufficient showing to establish a *prima facie* case of discrimination. If admissible evidence in the record is sufficient to establish a *prima facie* case, the burden of producing evidence shifts to the Best Buy to make a showing of a legitimate, nondiscriminatory explanation for the challenged decisions. If the Best Buy makes this showing, the burden of producing evidence returns to Stevenson, who must come forward with sufficient

admissible evidence on the record to show that the offered explanation is merely a pretext for the illegal discrimination. Rodgers, 417 F.3d at 850.

In order to establish a *prima facie* case of discriminatory discharge, Stevenson must establish that he is in a protected group, that he was qualified for the position he held, that he was discharged, and that circumstances exist giving rise to an inference that the decision was based on discrimination. Id.

Stevenson has demonstrated that he meets the first three criteria for establishing a *prima facie* case of discriminatory discharge. However, he has failed to produce sufficient admissible evidence to show that any circumstances exist which could give rise to an inference that his discharge was the result of unlawful discrimination. All that exists on the record are Stevenson's allegations that he was the only African American terminated as part of the de-staffing process in 2003 and that he was the oldest Parts Processor employed at the Service Center. Additionally, the only other individual who was terminated from the Parts Department at the same time as Stevenson was a white female.

Even if Stevenson were to have established a *prima facie* case of unlawful discharge, however, Best Buy has articulated a legitimate, nondiscriminatory explanation for Stevenson's discharge. Best Buy asserts that the selection of employees to be laid off as part of the de-staffing process followed a clear, step-by-step analysis established by the company and used to evaluate all employees. This constitutes a legitimate, nondiscriminatory explanation for Stevenson's discharge.

In accordance with the McDonnell-Douglas burden shifting analysis, Stevenson must produce sufficient admissible evidence showing that Best Buy's explanation for the discharge is "unworthy" of credence and is merely a pretext for illegal discrimination. Wallace v. Sparks

Health System, 415 F.3d 853, 860 (8th Cir. 2005). Unsubstantiated, conclusory allegations Stevenson that he was set up for discharge are not sufficient evidence to show pretext. Jeseritz v. Potter, 282 F.3d 542, 546-47 (8th Cir. 2002). Stevenson has failed to produce evidence, aside from his own conclusory accusations, to show that the company's explanation was not the reason he was discharged. Accordingly, Stevenson has failed to establish that Best Buy's explanation is merely a pretext. As a result, I will grant Defendants' motion for summary judgment with regard to Stevenson's claim of unlawful discharge under title VII and the ADEA.

Stevenson also asserts that he was subjected to hostile environment harassment in violation of Title VII and the ADEA due to his race, sex and age. In order to establish a *prima facie* case of hostile environment harassment, Stevenson must establish that he is a member of a protected group, that he experienced unwelcome harassment, that there is a causal nexus between the claimed harassment and Stevenson's protected group status, that the harassment affected a term, condition or privilege of employment, and that Best Buy knew, or should have known, of the harassment and failed to take remedial action. Sallis, 408 F.3d at 476-77; see also Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 759-60 (8th Cir. 2004); Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026-27 (8th Cir. 2004).

As a fundamental threshold to a claim for a hostile work environment, the conduct complained of must be "severe or pervasive enough to create an objectively hostile or abusive work environment." Henthorn, 359 F.3d at 1026 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In determining whether or not the conduct complained of is sufficiently severe to satisfy this prong of a *prima facie* case a number of factors are considered, including the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior

interferes with Stevenson's performance on the job.  Henthorn, 359 F.3d at 1026.  When a plaintiff alleges a hostile environment exists based on racial harassment, the plaintiff must show that his workplace is "dominated by racial slurs," not offhand or isolated comments or incidents.  Bainbridge, 378 F.3d at 759 (citing Jackson v. Flint Ink North American Corp., 370 F.3d 791, 794 (8th Cir. 2004)).

The harassment complained of by Stevenson does not rise to the level of an objectively hostile or abusive work environment.  Stevenson's complaints of harassment include a performance evaluation in June 2002 that he found to be unsatisfactory, instructions by his supervisor to assist other employees in the work of their department even though he and the other employees had allegedly agreed to divide labor in a particular way, and that his supervisor placed comments critical of certain aspects of his performance in his personnel file without reviewing those documents with him first.  None of these allegations meet the standards required by law to state a claim for hostile work environment discrimination.

Even if Stevenson's allegations could be viewed as harassment, he has failed to establish that the conduct occurred because of his race, sex, or age.  The only evidence that Stevenson has put forth with regard to the causal connection between his protected class status and the Defendants' conduct are his own conclusory allegations of harassment.  As a result, I will grant Defendants' motion for summary judgment with regard to Stevenson's claims of hostile work environment under Title VII and ADEA.

Stevenson further asserts claims for retaliation in violation of Title VII and ADEA.  In order to establish a *prima facie* claim for retaliation, Stevenson must show that he was engaged in statutorily protected conduct, that he suffered adverse employment action, and that there was a

causal connection between the protected conduct and the adverse action. Sallis, 408 F.3d at 477.

Stevenson engaged in a protected activity when he filed Charges of Discrimination at the EEOC in connection with the June 2002 evaluation he received from Ms. Aholt.

Stevenson has failed to show that there was a causal connection between Best Buy's decision to terminate him and his protected activity. "A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive." Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 633 (8th Cir. 2005). Best Buy terminated Stevenson's employment fourteen months after he filed his EEOC complaint. "With this lengthy delay, any causal nexus inference tends to evaporate." Shanklin v. Fitzgerald, 397 F.3d 596, 604 (8th Cir. 2005) (holding the plaintiff failed to establish causal connection where ten months elapsed between the plaintiff's discrimination charge and her subsequent discharge). Given the considerable length of time between Stevenson making his complaints clear to Best Buy and his discharge, there is insufficient evidence of a causal link to establish a *prima facie* case of retaliation.

I will grant Defendants' motion for summary judgement with regard to Stevenson's claims of retaliation under Title VII and ADEA.

F.   *Claims for Failure to Accommodate under the ADA*

Stevenson asserts a claim under the ADA for Best Buy's failure to accommodate his hernia and plantar fascitis. In order to recover under the ADA on a theory of either a failure to accommodate a disability or on the theory of disability discrimination, Stevenson must establish that he is a person with a disability. See Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005). A disability under the ADA is a "physical or mental impairment that substantially limits one or more of the major life activities" of an individual. See Brunko v. Mercy Hospital, 260 F.3d

939, 941 (8th Cir. 2001). "Major life activities" include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working, as well as sitting, standing, lifting and reaching. Id. To be "substantially limited," a person must be unable to perform a major life activity that the average person in the general population can perform or be significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. See 29 C.F.R. § 1630.2 and (j)(1)(i)-(ii).

Stevenson's has not alleged that he was substantially limited in any major life activity as a result of either his hernia or the plantar fascitis. Stevenson continued to work after receiving his diagnoses of hernia and plantar fascitis, and he as not alleged that he was ever unable to work or perform his job. His only claim is that he sought to be relieved of particular aspects of his job. He presents no evidence that any of his work restrictions limited him from performing a broad range of jobs or the job that he held. Under these circumstances, Stevenson has not established that he was a person with a disability. See Brunko, 260 F.3d at 941-942.

I will grant Defendants' motion for summary judgment with regard to Stevenson's claims under the ADA.

### G. *Claims for Wage Discrimination under the EPA*

Stevenson asserts a claim for wage discrimination under the Equal Pay Act of 1963, 29 U.S.C. § 206(d). To recover under the EPA for wage discrimination, Stevenson must produce evidence that Best Buy discriminated on the basis of sex by paying different wages to employees of opposite sexes for "equal work on the jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." Tenkku v.

Normandy Bank, 348 F.3d 737, 740 (8th Cir. 2003) (quoting 29 U.S.C. § 206(d)(1)).  Stevenson may not simply rely on unsubstantiated allegations in his pleadings to establish that he was paid different wages than white or female employees for what he says was the same work.  Id. at 741; see also Younts v. Freemont Co., 370 F.3d 748, 752-53 (8th Cir. 2004).

Stevenson has failed to introduce any evidence that he was paid different wages than female employees for similar work.  Additionally, Stevenson's allegation of wage discrimination pay is refuted by George's affidavit.  George's affidavit shows that there were both female and white employees who were paid less than Stevenson at the time of his termination.  In his affidavit, George asserts that the different wage rates may depend on an individual's related work experience prior to hire at Best Buy, his or her tenure with the company, and his or her job performance.  Stevenson has not produced any admissible evidence that refutes George's affidavit, and therefore, has failed to establish a *prima facie* case of wage discrimination or violation of the EPA.  As a result, I will grant Defendants' motion for summary judgment with regard to Stevenson's claims under the EPA.

    *H.*    *Claims for Wrongful Discharge in Violation of Missouri Law*

Stevenson further asserts that his complaints regarding discrimination constitute reports of "wrongdoing" sufficient to establish a claim for "wrongful discharge" under Missouri common law.  Stevenson's complaints here are essentially the same as his claim for retaliation under Title VII.  Where a remedy already exists to protect the public policy interests alleged to be the basis of the claimed "wrongful discharge," there is no claim under Missouri common law.  Osborn v. Professional Service Indust., Inc., 872 F. Supp. 679, 681 (W.D. Mo. 1994) (holding that because the ADEA provides a remedy for this type of wrong, the plaintiff did not present facts that would

bring her within the public policy exception).

As a result, I will grant Defendants' motion for summary judgment with regard to Stevenson claim for wrongful discharge under Missouri common law.

*I.  Claims for Workers' Compensation Retaliation*

In his motion for summary judgment, Stevenson attempts to assert claims for retaliation under Mo. Rev. Stat. § 287.780 for having made a Workers' Compensation claim for benefits. This claim was not included in his Second Amended Complaint. Although Stevenson did include this claim in his First Amended Complaint, his Second Amended Complaint superceded all of his pervious complaints and rendered them without legal effect. See In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000); see also Clark v. Terrant County, Texas, 798 F.2d 736, 740 (5th Cir. 1986).

As a result, Stevenson's claim for retaliation under Mo. Rev. Stat § 287.780 is not properly before me, and I will grant Defendants' motion for summary judgment with regard to this claim.

Even if I were to consider Stevenson's claim, however, it would still fail as a matter of law. In order to establish a claim for Workers' Compensation retaliation in violation of Mo. Rev. Stat. § 287.780, Stevenson must demonstrate that he was employed before suffering an injury, that he exercised rights granted by Missouri Statue Chapter 287, that he was discharged or otherwise discriminated against, and that an "exclusive causal relationship" existed between his actions and Best Buy's actions. Hansome v. Northwestern Cooperage Co., 679 S.W.2d 273, 275 (Mo. 1984). Stevenson has not established a causal link between his discharge and his exercise of rights under Missouri Statute Chapter 287. "Causation does not exist for purposes of a workers' compensation retaliation claim if the basis for the employee's discharge is valid and nonpretextual." Stephenson

v. Raskas Dairy, Inc., 26 S.W.3d 209, 212-13 (Mo. Ct. App. 2000). As noted above, Best Buy has asserted a valid reason for Stevenson's discharge, and Stevenson has not established that Best Buy's reason was merely a pretext for a discriminatory purpose.

I will grant Defendants' motion for summary judgment with regard to Stevenson's claims of Workers' Compensation retaliation.

### J. *Claims for Violation of Workers' Compensation Act*

Stevenson asserts that Best Buy failed to make a Workers' Compensation report of the injury to his feet in violation of the Missouri Workers' Compensation Act, Mo. Rev. Stat. § 287 *et seq.* As with his workers' compensation retaliation claim, Stevenson's Second Amended Complaint fails to assert a claim for violations of the Worker's Compensation Act. As a result, this claim is not properly before me, and I will grant Defendants' motion for Summary Judgment with regard to this claim.

Even if I were to consider Stevenson's claim for Workers' Compensation violations, however, Stevenson's claim would still fail. There is no common law action against an employer for a workplace injury in Missouri. The Missouri Workers' Compensation Act is generally the exclusive remedy available to employees for alleged workplace injury. See Donovan v. Harrah's MD Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002); see also Mo. Rev. Stat. § 287.120 (making Missouri's Worker's Compensation Act the exclusive remedy for employees claiming workplace injury). As a result, I will grant Defendants' motion for summary judgment with regard to Stevenson's claim for Workers' Compensation violations.

## *RICO Claims*

Stevenson also asserts claims for RICO violation in his Motion for Summary Judgment. As

with Stevenson's claims regarding Workers' Compensation, the RICO claims were not pled in his Second Amended Complaint. As a result, this claim is not properly before me, and I will grant Defendants' motion for summary judgment with regard to this claim.

Even if I were to consider this claim, it would be dismissed because Stevenson does not have standing to seek recovery under RICO. In order to seek recovery under RICO, Stevenson must have suffered harm as a result of one of the predicate acts forming the basis of the RICO claim. Hamm, et al. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 952 (8th Cir. 1999); Bowman v. Western Auto Supply Co., 985 F.2d 383, 388 (8th Cir. 1993) (holding that an employee claiming he was discharged for refusing to participate in the alleged racketeering activity did not have standing to sue under RICO). Stevenson has produced any evidence that would support a finding that he has been harmed by Best Buy's alleged RICO violation. As a result, I will grant Defendants' motion for summary judgment with regard to Stevenson's claims under RICO.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of Defendants Best Buy Corp., Fred George, Dorothy Beard, Laslie Boyer, Kathie Fischer, Janice Aholt, Traci L. Lembeck, Mary Lawless, Donna Conway, and Karen Giddens [# 140] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment of Plaintiff Willie J. Stevenson [#132] is **DENIED.**

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2005.